IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| INTERNATIONAL PAPER COMPANY, | ) ) ) |
| Plaintiff, | ) ) Case No. 2:23-cv-2299 |
| vs. | ) ) ) |
| MEDMARC CASUALTY INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT
PURSUANT TO 28 U.S.C. § 2201**

Plaintiff International Paper Company, by and through undersigned counsel, for its Complaint for Declaratory Judgment Pursuant to 28 U.S.C. § 2201 against Defendant Medmarc Casualty Insurance Company states as follows:

**PARTIES**

1. International Paper Company ("IP") is, and at all times relevant was, a New York corporation with its principal place of business located at 6400 Poplar Avenue, Memphis, TN 38197.

2. Medmarc Casualty Insurance Company ("Medmarc") is a Vermont company with its principal place of business located at 4795 Meadow Wood Lane, Suite 335, West Chantilly, VA 20151.

## JURISDICTION AND VENUE

3. An actual controversy of a justiciable nature exists between IP and Medmarc. This Court has jurisdiction under 28 U.S.C. § 2201 and 28 U.S.C. § 1332 as there is complete diversity of citizenship between IP and Medmarc. The amount in controversy exceeds $75,000, exclusive of interest, costs and fees.

4. Personal jurisdiction exists over Medmarc on the basis that, since 2006 Medmarc has continuously, systematically, and purposefully conducted business with IP in Memphis, Tennessee by and through Medmarc's dealing with IP pertaining to the Champion Indemnification, discussed more fully below.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Medmarc is subject to personal jurisdiction in this judicial district and because a substantial part of the events and activities giving rise to IP's claim for declaratory relief occurred in this judicial district.

## FACTUAL HISTORY

6. St. Regis Corporation ("St. Regis") was a New York Corporation with its principal place of business located in New York. In 1985, St. Regis was merged into Champion International Corporation.

7. Champion International Corporation ("Champion") was a New York Corporation with its principal place of business in Stamford, Connecticut. In 2000, Champion was merged into IP.

8. Dependable Insurance Group, Inc. of America ("Dependable") was a Florida Corporation with its primary place of business in Florida. Dependable was a wholly-owned subsidiary of St. Regis, and then wholly owned by Champion after St. Regis was merged into Champion.

9. Riverside Group, Inc. ("Riverside") was a Florida corporation with its principal place of business in Florida.

10. On September 10, 1986, Champion and Riverside entered into a Stock Purchase Agreement in which Riverside acquired all of the shares of stock of Dependable ("Champion/Riverside Agreement"). A true and correct copy of the Champion/Riverside Agreement is attached hereto as **Exhibit 1**.

11. Section 12.1 of the Champion/Riverside Agreement imposed certain indemnity obligations upon Champion pertaining to an Obligatory Retrocession Agreement ("Retrocession Agreement") by and between The Omaha Indemnity Company ("OI") and Dependable, including certain of Dependable's subsidiaries and related entities. A true and correct copy of the Retrocession Agreement is attached hereto as **Exhibit 2**.

12. The Retrocession Agreement became effective on September 1, 1983, and pertained to the reinsurance obligations of OI for the benefit of Dependable. In the Retrocession Agreement, OI agreed to reinsure Dependable for liabilities arising out of any and all policies, certificates, contracts, etc. produced or underwritten by the following entities: Frederick Stiff, National Treaty Services, Atlantic International Management, Ltd., Falcon Brokerage Services, Frederick Reinsurance Co., W.W.J. Hazeltine and W. Hazeltine Associates (collectively the "Reinsured Liability Producers").

13. The Retrocession Agreement further restricted the obligations of OI under the Retrocession Agreement to policies bound, attaching, or renewed during the term of January 1, 1981 to July 1983.

14. OI's financial obligations under the Retrocession Agreement were modified by an arbitration decision in 1988.

15. Following the Champion/Riverside Agreement, Champion and Riverside executed several supplemental indemnification agreements. Pertinent to the dispute by and between IP and Medmarc at this time is only the First Supplemental Indemnification Agreement ("First Supplemental Agreement") entered into on September 30, 1987, a true and correct copy of which is attached hereto as **Exhibit 3**.

16. The First Supplemental Agreement pertained to certain indemnity obligations of Champion concerning certain reinsurance agreements entered into by Dependable and not addressed in the Retrocession Agreement. Specifically, the First Supplemental Agreement required Champion to indemnify Riverside with respect to programs identified as the Cravens Dargan Programs and Other Assumed Business Programs (collectively, "The Programs").

17. On June 16, 1995, Riverside and Medmarc entered into a Stock Purchase Agreement, whereby Medmarc acquired Dependable ("Riverside/Medmarc Agreement"). A true and correct copy of the Riverside/Medmarc Agreement is attached hereto as **Exhibit 4**.

18. Under Section 9.7 of the Riverside/Medmarc Agreement, Medmarc was to receive written confirmation "from Champion that the Champion indemnification…will inure to the benefit of [Medmarc]." Section 1.4(c) of the Riverside/Medmarc Agreement defined "Champion Indemnification" to be "collectively the indemnification provided to Riverside pursuant to that [Champion/Riverside Agreement] as supplemented…"

19. Champion consented to the assignment of certain indemnities pertaining to it and Riverside in correspondence dated May 4, 1995, a true and correct copy of which is attached hereto as **Exhibit 5**.

20. On September 22, 1995, a Written Assignment Agreement ("Written Assignment") was executed between Champion, Riverside, Dependable, and Medmarc. A true and correct copy of the Written Assignment is attached hereto as **Exhibit 6**.

21. Since IP relocated its headquarters from Stamford, Connecticut to Memphis, Tennessee in 2006, Medmarc has continuously, systematically and purposefully tendered to IP obligations which Medmarc claimed were owed to it under the "Champion Indemnification.[1]"

## CAUSE OF ACTION

### COUNT I - CLAIM FOR DECLARATORY RELIEF

22. The foregoing allegations of the Complaint are incorporated herein by reference as if specifically set forth herein.

23. Dependable allegedly issued an umbrella policy of insurance to a defunct Texas Corporation known as Payne & Keller for the year March 1, 1976 - March 1, 1977 ("Umbrella Policy"). The Umbrella Policy is alleged to provide Five Million Dollars ($5,000,000) in coverage to Payne & Keller.

24. Payne & Keller and certain corporate entities related to it are dissolved entities that may have been insulation contractors allegedly using, among other things, asbestos containing materials.

25. As Payne & Keller is a dissolved entity, on August 27, 2021, and as clarified on September 30, 2021, Peter D. Protopapas was appointed by the South Carolina Court of Common

---

[1] Section 1.4(c) of the Riverside/Medmarc Agreement defines "Champion Indemnification" as "collectively the indemnification provided to Riverside pursuant to [the Champion/Riverside Agreement], as supplemented on September 30, 1987, October 13, 1987, and February 23, 1988, by and between Champion . . . and Riverside . . ., along with the irrevocable Letter of Credit No. 662-258-92200 . . . issued by The Sanwa Bank Limited in favor of [Dependable Insurance Company, Inc.] on April 4, 1988, as subsequently amended . . . " Ex. 4, Riverside/Medmarc Agreement, § 1.4(c).

Pleas, For the Fifth Judicial Circuit as the "Receiver" for Payne & Keller. True and correct copies of the Court's Orders are attached hereto as **Exhibits 7 and 8**.

26. On November 23, 2021, the Receiver filed suit against Medmarc and multiple other insurers in the South Carolina Court of Common Pleas for the Fifth Judicial District, alleging breach of contract and seeking a declaratory judgment. The claim against Medmarc pertains to the alleged Umbrella Policy. A true and correct copy of the lawsuit filed by the Receiver is attached hereto as **Exhibit 9**.

27. Payne & Keller and/or the Receiver have been named as defendants in certain asbestos personal injury lawsuits in the South Carolina Court of Common Pleas.

28. Beginning in January of 2022 and continuing since that time, Medmarc has attempted to tender to IP the defense of the action filed by the Receiver and the asbestos personal injury actions in South Carolina claiming that, to the extent that the Umbrella Policy may exist, defense and indemnity is owed by IP to Medmarc according to the terms of the Champion Indemnification.

29. There is no basis pursuant to the Champion Indemnification for IP to defend or indemnify Medmarc as to any claim against Medmarc with respect to the Umbrella Policy or any Dependable policy of insurance allegedly issued to Payne & Keller. Neither the Retrocession Agreement nor the First Supplemental Agreement pertain to the alleged Umbrella Policy. Any claim by the Receiver asserted against Medmarc does not arise out of policies procured by the Reinsured Liability Producers, and/or does not pertain to a policy issued, renewed or bound between January 1, 1981 to July 20, 1983. And, any claim by the receiver against Medmarc does not arise from the The Programs identified in the First Supplemental Agreement. Accordingly,

there is no contractual obligation or duty otherwise requiring IP to defend or indemnify Medmarc with respect to any policy that Dependable may have issued to Payne & Keller.

30. In pertinent part, the Champion/Riverside Agreement states:

### ARTICLE XII

12.1 <u>Omaha Indemnity.</u>  [Champion] agrees to pay to [Riverside] fifty (50%) percent, until [Champion] shall have paid $5,000,000 pursuant to the Section 12.1, and one hundred (100%) percent thereafter of any and all Losses incurred (whether or not reserved against) by [Dependable] and the Insurers subsequent to September 1, 1983: (i) resulting from the failure of [OI] to perform its obligations under that certain Obligatory Retrocession Agreement (the "retrocession agreement") effective September 1, 1983 by and among [Dependable], the Insurers, Dependable Reinsurance Company, Ltd. ("Dependable Reinsurance") and OI; and (ii) any matter defined as "Covered Losses" in Article I of the Retrocession Agreement to the extent indemnity is not provided therefore in the Retrocession Agreement. [Champion] shall make payments to [Riverside] under clause (i) of the first sentence of this Section 12.1 within ten days after notice from [Riverside] that OI has failed to make any payments to the [Dependable] and the Insurer under the Retrocession Agreement subsequent to the Closing Date. [Champion] shall make payments to [Riverside] under clause (ii) of the first sentence of this Section 12.1 within the period that would be contemplated by the Retrocession Agreement if indemnity were proved for therein…

Ex. 1, Champion/Riverside Agreement, § 12.1.

31. In pertinent part, the Retrocession Agreement states:

### ARTICLE I

### BUSINESS AND TERRITORY COVERED

Subject to the provisions of Article III and Article IV, [OI] shall indemnify the Dependable Subsidiaries and their respective successors and assigns (collectively, "Reinsured Parties"), in respect of the liability which may accrue to any of them under any and all insurance and reinsurance agreements, policies, bonds, binders, certificates, contracts, so-called treaty agreements, cover notes, co-insurance or co-indemnity agreements or other evidences of liability (hereinafter collectively referred to as "Policies"), oral or written, now, heretofore or hereafter in force anywhere in the world, produced, underwritten, arranged or contracted for on behalf of any of them by any one or more of:

(A) Frederick F. Stiff, and any of the entities with which he is affiliated, including, but not limited to, National Treaty Services, Inc., Atlantic International

Management, Ltd., Falcon Brokerage Services, Ltd. and Frederick Reinsurance Company, Ltd.; and

(B)     W.W.J. Hazeltine, and any of the entities with which he is affiliated, including but not limited to W. Hazeltine Associates, Ltd.

(collectively, the "Covered Business").

\* \* \*

## ARTICLE III

## COMMENCEMENT AND TERMINATION

\* \* \*

> [OI] shall be only liable with respect to any and all Policies bound, attaching or renewed (including Policies with retroactive inception dates) by or on behalf of any Reinsured Party during the term 12:01 A.M., Eastern Standard Time, January 1, 1981 to 12:01 A.M., Eastern Daylight Time, July 20, 1983.

Ex. 2, Retrocession Agreement, Art. I, III.  The Umbrella Policy does not fall within either the definition of Covered Business or the defined time period.

32.        Furthermore, the alleged liability and indemnification is not covered by the First Supplemental Agreement which states:

> 2. <u>Cravens Dargan</u>.   Seller agrees to pay Buyer fifty (50%) percent, until Seller shall have paid $5,431.120 pursuant to this Section 2 and one hundred (100%) percent thereafter, of any and all payments made (whether or not reserved against) by the Company and Insurers subsequent to the Closing Date, in respect of Losses arising out of or relating to the Cravens Dargan Programs.
>
> \* \* \*
>
> 3. <u>Other Assumed Business.</u>   Seller agrees to pay Buyer fifty (50%) percent, until Seller shall have paid $467,861.50 pursuant to this section 3 and one hundred (100%) percent thereafter, of any and all payments made (whether or not reserved against) by the Company and the Insurers subsequent to the Closing Date, in respect of Losses arising out of or relating to the Other Assumed Business Programs.

Ex. 3, First Supplemental Agreement, §§ 2, 3.  The Umbrella Policy does not fall within the definition of either the Cravens Dargan Program or Other Assumed Business Programs.

33. Notwithstanding the foregoing terms and conditions of the pertinent agreements, Medmarc demands that IP defend and indemnify it with respect to the claims of the Receiver against it and all asbestos personal injury claims pertaining to Payne & Keller.

34. No other contractual term or obligation exists that would require IP to defend, indemnify or otherwise reimburse Medmarc with respect to the Umbrella Policy or any insurance policy that Dependable may have issued to Payne & Keller.

35. To the extent that the Umbrella Policy and/or any other Dependable insurance policy may exist and was issued to Payne & Keller, any insurance obligation is solely the responsibility of Medmarc as the successor to Dependable.

36. A justiciable controversy, therefore, exists as to whether IP has any obligation to Medmarc under the Champion Indemnification with respect to the Umbrella Policy or any insurance policy Dependable may have issued to Payne & Keller.

37. A Declaratory Judgment is necessary and appropriate so that IP's obligations and rights to Medmarc under the Champion Indemnification and any and all other pertinent contractual terms and obligations are determined concerning any and all insurance policies that may have been issued to Payne & Keller by Dependable.

WHEREFORE, PREMISES CONSIDERED, Plaintiff International Paper Company prays as follows:

1. The Court issue proper process requiring Defendant to respond to this Complaint within the time required by law;

2. The Court issue a declaratory judgment that neither the Champion Indemnificiation nor any other contractual obligation or term require IP to defend, indemnify or otherwise reimburse

9

Medmarc with respect to the Umbrella Policy or any insurance policy that Dependable may have issued to Payne & Keller;

    3.    The Court issues a declaratory judgment that the Umbrella Policy and/or any other Dependable insurance policy that may have been issued to Payne & Keller, is solely the responsibility of Medmarc as the successor to Dependable;

    4.    IP be awarded all fees, costs and expenses incurred as a result of filing this action; and

    5.    IP be awarded any and all other relief that this Court determines to be just, equitable and proper.

Dated: May 11, 2023

    Respectfully submitted,

    s/ Robert F. Tom
    Robert F. Tom (#26636)
    Kelly L Hagy (#36524)
    BAKER DONELSON BEARMAN
     CALDWELL & BERKOWITZ, PC
    First Horizon Building
    165 Madison Ave., Suite 2000
    Memphis, Tennessee 38103
    Telephone: 901.577.2159
    Facsimile: 901.577.0818
    rtom@bakerdonelson.com
    khagy@bakerdonelson.com

    Clarence Risin (#16874)
    BAKER DONELSON BEARMAN
     CALDWELL & BERKOWITZ, PC
    1600 West End Ave., Suite 2000
    Nashville, TN 37201
    Telephone: 615.726.7319
    Facsimile: 615.744.7319
    crisin@bakerdonelson.com

    ***Counsel for Plaintiff International Paper Company***